**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EPIC FRESH PRODUCE, LLC, | ) | |
| | ) | Case No. 17-cv-8381 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| OLYMPIC WHOLESALE PRODUCE, INC., | ) | |
| and NICHOLAS DOUMOURAS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for a temporary restraining order ("TRO") [6] filed by Plaintiff Epic Fresh Produce, LLC ("Plaintiff"). Also before the Court are motions for a stay of proceedings [28], a motion for extension of time to file an answer to the complaint [29], and a motion for extension of time to provide the Court with information about financial status [34] filed by Defendants Olympic Wholesale Produce, Inc. ("Olympic") and Nicholas Doumouras (together, "Defendants"). For the reasons stated below, the Court grants Plaintiff's motion for a TRO [6], denies Defendants' stay motion [28], and grants Defendants' motions for extensions of time [29, 34]. The terms of the TRO are set out at the end of this opinion. The time for Defendants to answer or otherwise plead is extended to January 8, 2018; the time for Defendants to provide a full and complete accounting is extended to December 21, 2017. The parties are directed to confer on a proposed protective order and to transmit to the Court's Proposed Order Box (Proposed_Order_Dow@ilnd.uscourts.gov) an agreed protective order (preferred) or their respective proposed orders (if agreement is not reached) no later than

December 11, 2017.[1]  Once a protective order is in place, Defendant Olympic must provide all of

the financial information that it wishes to submit in compliance with the Court's order for an

accounting to Plaintiff, subject to the terms of the protective order.  The case is set for a

preliminary injunction hearing on January 3, 2018 at 10:30 a.m.  If the parties wish to extend the

TRO by agreement, they may do so and request a later date for the preliminary injunction

hearing.[2]  Any supplemental briefs in support of or in opposition to Plaintiff's motion for a

preliminary injunction must be filed by December 28, 2017, as this schedule (1) allows the

parties time to assess the accounting information that Defendants have provided to date and the

more robust information that they must provide by December 21 and (2) allows the Court time

for review of the additional filings in advance of the hearing date.  Given that the legal standards

for a TRO and a preliminary injunction are essentially the same and the schedule set out above

provides ample time to present both the relevant facts and law, it may be that the January 3

hearing will take the form of an oral argument on the motion without any live witnesses.  To the

extent that either side wishes to present live testimony—as opposed to using affidavits to submit

their factual contentions—the parties must file a joint status report no later than noon on January

---

[1] The Northern District of Illinois web site provides a Model Confidentiality Order, available in PDF, Word, and Word Perfect, that most litigants use as a template.

[2] The TRO is valid for 14 days in the first instance, which can be extended by another 14 days "for good cause."  See Fed. R. Civ. P. 65(b)(2).  Given Defendants' requests for extensions of time to comply with the Court's previously ordered accounting and to file a responsive pleading, the "good cause" standard to extend the TRO for the full 28 days authorized under the Rule almost certainly will be satisfied.  Beyond that period, however, the TRO can only be extended with the consent of the adverse party.  Given those time constraints, the Court has set this matter for a preliminary injunction hearing on January 3, 2018— which is the day before the TRO would expire if given its full temporal scope.  If either party objects to the extension of the original TRO for the additional 14 days—that is, from December 21, 2017 to January 4, 2018—they must file a motion requesting that the Court set this case for a status hearing on December 21, 2017, at 9:00 a.m. and should be prepared to argue the motion for preliminary injunction at that time.  Absent the filing of such a motion, the TRO entered today will be extended through January 4, 2018 without any further order of the Court.

2, 2018, identifying any witnesses they propose to call, the subject matter of the witness' testimony, and an estimate of the length of the direct examination.

## I.  Background[3]

Plaintiff filed this action against Defendants to address Defendants' alleged violations of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* (the "PACA"), along with the PACA's implementing regulations promulgated by the Secretary of Agriculture, 7 C.F.R. § 46.1 *et seq.*  Specifically, Plaintiff alleges that it is the beneficiary of a floating, non-segregated PACA statutory trust ("PACA Trust"), it is entitled to the protection of the PACA Trust, and Defendants have not maintained the PACA Trust as required by federal law.  [1 ¶¶ 24–28.]

Plaintiff is a dealer in wholesale and jobbing quantities of perishable agricultural commodities ("produce") and is licensed as such under the PACA.  [1 ¶¶ 6–7.]  Mario Cardenas is a principal of Plaintiff.  [8 (Cardenas Declaration), ¶ 5.]  Defendant Olympic is also a PACA-licensed dealer of produce.  [1 ¶¶ 8–10.]  Defendant Doumouras is President of Defendant Olympic.  [17 Exhibit 2 (Doumouras Declaration), ¶ 3.]  Plaintiff alleges that Defendant Doumouras is in a position to control the business, finances, and assets of Olympic.  [1 ¶ 12.]

Between March 21, 2017 and September 8, 2017, Plaintiff sold to Olympic fresh honeydew melons, cantaloupe melons, and watermelons at an invoiced price of $312,035.00.  [1 ¶ 13.]  Cardenas and Doumouras negotiated these sales for their respective companies over the telephone and via e-mail.  [17 Exhibit 2 (Doumouras Declaration), ¶ 6]; [30-1 (Supplemental Doumouras Declaration), ¶ 6].  Plaintiff sent an invoice to Defendant Olympic for each produce

---

[3] The information in this section is drawn from Plaintiff's Complaint [1] and the briefs and other materials that the parties submitted in support of and opposition to Plaintiff's motion for a TRO.

shipment.[4]  [1, Exhibit A (Epic Invoices).]  Each invoice states that the "Sale Terms" for the shipments are "PACA 10."  [*Id.*]  Each invoice also contains the following language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. Sec. 499e(c)).  The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

[*Id.*]  Plaintiff alleges that Olympic has not paid $180,705.90 of the amount owed to it for these shipments.  [1 ¶ 17.]  Plaintiff also alleges that, as recently as October 2017, Defendants have intentionally issued bad checks to Plaintiff.  [7 at 2.]  According to Plaintiff, the evidence of Defendants' non-payment combined with signs of financial distress demonstrate that Defendants are dissipating trust assets.  [17 at 12]; [23 at 10–11].  In this action, Plaintiff brings claims for failure to maintain and not dissipate the PACA trust assets of Olympic (Counts I and II); conversion of PACA Trust assets (Count III); failure to make full payment promptly in violation of PACA (Count IV); common law breach of contract (Count V); and common law intentional breach of fiduciary duty (Count VI).[5]

On November 20, 2017, Plaintiff moved for entry of a TRO and a preliminary injunction. [6], [9].  After counsel for Defendants appeared at the hearing, the Court set an expedited briefing schedule on the TRO motion.  Defendants filed an opposition [17], and Plaintiff filed a reply [23].  Defendants also filed a variety of other motions, including a motion to strike several of Plaintiff's filings [27], a motion to stay proceedings [28], and a motion for extension of time

---

[4] Defendants dispute that Defendant Olympic has actually received invoices for all shipments of produce from Plaintiff, [see 17 at 2, 8],  although Plaintiff has filed a declaration from Samy Bigio attaching e-mail transmittals of the invoices to Defendants, [see 24].

[5] The parties have also brought to the Court's attention that a USDA administrative action was filed against Olympic in early November 2017, alleging that Olympic has failed to make full payment promptly to four creditors and seeking revocation of Olympic's PACA license.  See [28]; [31, Exhibit A (USDA Administrative Complaint)].

to answer the complaint [29]. The Court addressed some of the parties' arguments in a previous order [32] and requested supplemental briefing on the issues raised by the parties in their numerous filings. The parties provided this supplemental briefing on December 5, 2017. See [35], [36]. Defendants also moved [34] for an extension of time to provide the Court with the necessary information to assess Olympic's financial status, which Plaintiff has opposed [38].

## II.     Plaintiff's Motion for a Temporary Restraining Order

### A.     Legal Standard

The Seventh Circuit uses a two-step analysis to assess whether preliminary injunctive relief is warranted. See *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.,* 549 F.3d 1079, 1085–86 (7th Cir. 2008). This analysis is the same one that is used to determine if a TRO is warranted. *Gray v. Orr*, 4 F. Supp. 3d 984, 989 n.2 (N.D. Ill. 2013). "In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661–62 (7th Cir. 2015). If the movant makes the required threshold showing, then the court moves on to the second stage and considers: "(4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties," *i.e.* the public interest. *Id.* at 662. The Court balances the potential harms on a sliding scale against the movant's likelihood of success. The greater the movant's likelihood of success, "the less strong a showing" the movant "must make that the balance of harm is in its favor." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).

### B.    Analysis

For the reasons explained in this section, the Court concludes that the requirements for entry of a TRO have been satisfied.

### 1.    Reasonable Likelihood of Success on the Merits

"At the preliminary injunction stage, the plaintiff must show that 'it has a better than negligible chance of succeeding on the merits so that injunctive relief would be justified.'" *Personeta, Inc. v. Persona Software, Inc.*, 418 F. Supp. 2d 1013, 1016 (N.D. Ill. 2005) (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001)).

Plaintiff's likelihood of success depends upon its rights under the PACA.  Congress enacted the PACA to regulate the nation's produce industry and protect sellers of perishable agricultural commodities from unfair conduct by buyers of such commodities, including failure to pay promptly and fully for produce ordered.  See *In re Ebro Foods, Inc.*, 449 B.R. 759, 762 (N.D. Ill. 2011).  Under the PACA, it is unlawful for any PACA-licensed dealer to fail to make "full payment promptly" in respect of any transaction in a perishable agricultural commodity in interstate commerce.  7 U.S.C. § 499b(4); see also 7 C.F.R. § 46.2(aa)(5), (10) ("Full payment promptly" means, for "[p]ayment for produce purchased by a buyer, within 10 days after the day on which the produce is accepted" when parties have not contracted for different terms).  As a further protection for sellers, the PACA also creates a non-segregated, floating statutory trust in favor of sellers in produce sold to buyers under which the buyer holds the produce and any proceeds and receivables from the produce in trust for the benefit of the seller.  7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b); see also *Am. Banana Co., Inc. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 37 (2d Cir. 2004) (the purpose of the statutory trust is to provide "greater protection" to sellers in the face of "the exigencies of the perishable commodities business").

This PACA Trust arises automatically by operation of law once the buyer accepts the produce from the seller in an interstate commerce transaction. See *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002); *Spada Properties, Inc. v. Unified Grocers, Inc.*, 121 F. Supp. 3d 1070, 1075 (D. Or. 2015) ("The trust comes into existence when produce is delivered, and remains in effect until payment is received."); *Ebro Foods*, 449 B.R. at 762 ("PACA trust rights are automatically granted when perishable commodities are bought on credit, but can be lost if not preserved by the seller."). Suppliers that properly preserve their rights remain trust beneficiaries until they are paid in full. 7 U.S.C. § 499e(c)(2). Dealers subject to the PACA Trust provisions are required to maintain trust assets so that they are available to satisfy outstanding obligations to produce sellers, 7 U.S.C. § 499b(4), and "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [the PACA]." 7 C.F.R. § 46.46(d)(1). Unpaid suppliers who perfect their trust rights gain a priority position over all other creditors, including secured creditors. *Patterson*, 307 F.3d at 669 (citing *C.H. Robinson Co. v. Trust Co. Bank, N.A.*, 952 F.2d 1311, 1315 (11th Cir. 1992)).

"In return for its protections, PACA establishes strict eligibility requirements." *Patterson*, 307 F.3d at 669. First, in order to be eligible for PACA protection, a seller must be selling its produce on a short-term credit basis. See 7 C.F.R. § 46.46(e)(2); see also *Am. Banana Co.*, 362 F.3d at 38; *Patterson*, 307 F.3d at 669. Under the applicable regulations, the default period of time for making payment under the PACA is within 10 days of the buyer's acceptance of the produce. 7 C.F.R. § 46.2(aa)(5). Parties may agree to payment terms other than that default 10-day period, but the maximum time for payment to which a seller can agree without losing eligibility for trust benefits is 30 days after receipt and acceptance of the produce. 7

C.F.R. § 46.46(e)(2); *Ebro Foods*, 449 B.R. at 763. Any agreement to different payment terms must be reduced to writing, and it must be entered into prior to the transaction. 7 C.F.R. § 46.46(e)(1); see also *Patterson*, 307 F.3d at 669; *Sutherland Produce Sales, Inc. v. High Country Distrib. LLC*, 2017 WL 782281, at *9 (D. Utah Feb. 28, 2017). A seller that has preserved its trust benefits may also enter into a post-default payment schedule with the defaulting buyer, or accept a partial payment from the defaulting buyer, without forefeiting its eligibility under the PACA Trust. See 7 C.F.R. § 46.46(e)(3); see also *Spada Properties, Inc. v. Unified Grocers, Inc.*, 38 F. Supp. 3d 1223, 1231 (D. Or. 2014).

Second, in order to be eligible for PACA protection, a seller must file a written notice of intent to preserve trust benefits. 7 U.S.C. § 499e(c)(3); 7 C.F.R. § 46.46(f). See also *Ebro Foods*, 449 B.R. at 762–63; *P.L.U.S. Brokerage, Inc. v. Kim*, 908 F. Supp. 2d 711, 715 (D. Md. 2012). There are two methods of achieving this notice. The unpaid seller can give written notice of intent to preserve the benefits of the trust in the manner outlined in 7 U.S.C. § 499e(c)(3). PACA licensees may also follow the "invoice method" notice procedure outlined in 7 U.S.C. § 499e(c)(4). Under this subsection, a licensee may preserve its PACA Trust benefits through its "ordinary and usual billing or invoice statements" if those statements include (1) the time period for payment if the parties expressly agree to a different period from that established by the Secretary of Agriculture; and (2) the following text: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these

commodities until full payment is received." 7 U.S.C. § 499e(c)(3), (4); see also *Ebro Foods*, 449 B.R. at 763.

### a. The Court's Jurisdiction to Issue Injunctive Relief

The Court will first take a moment to address Defendants' initial argument that the Court lacks jurisdiction over an action by a private party to prevent and restrain dissipation of a PACA Trust. [17 at 5.] As the Court stated in its December 1, 2017 order [32], this argument is a non-starter. The PACA states that "[t]he several district courts of the United States are vested with jurisdiction specifically to entertain actions by trust beneficiaries to enforce payment from the trust." 7 U.S.C. § 499e(c)(5)(i). Defendants themselves have pointed out that the only two circuit courts to address the question of whether this provision includes jurisdiction over actions for injunctive relief by private parties have answered in the affirmative. See *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 138 (3d Cir. 2000) ("[D]istrict courts clearly have jurisdiction over actions by private parties seeking to enforce payment from the trust."); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 157 (11th Cir. 1990) ("[N]either Section 499e(c)(4) nor PACA's legislative history directly or inferentially restricts the district court's jurisdiction to entertain injunctive suits by trust beneficiaries."). Moreover, courts in this district and beyond routinely exercise jurisdiction to entertain actions for injunctive relief by trust beneficiaries. See, *e.g.*, *Circus Fruits Wholesale Corp. v. Farmer Joen Produce Corp.*, 2017 WL 1397950, at *1 (D.N.J. Apr. 18, 2017); *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, 2015 WL 3962007, at *1 (N.D. Ill. June 25, 2015); *Anthony Marano Co. v. J & S Produce Corp.*, 2014 WL 4922324, at *5 (N.D. Ill. Sept. 30, 2014); *Midwest Mktg. Co., Inc. v. Quality Produce Suppliers, Inc.*, 6 F. Supp. 3d 843, 846 (N.D. Ill. 2013); *Superior Sales, Inc. v. Bakker Produce, Inc.*, 2013 WL 214251, at *2–3 (N.D. Ind. Jan. 18, 2013); *Sato & Co., LLC v. S & M Produce, Inc.*, 2010

WL 431599, at *1 (N.D. Ill. Feb. 2, 2010); *Harvest Sensations, LLC v. Evergreen Produce Imports, Inc.*, 2009 WL 10667728, at *1–2 (S.D. Fla. July 15, 2009); *Continental Fruit Co. v. Thomas J. Gatziolis & Co., Inc.*, 774 F. Supp. 449, 454 (N.D. Ill. 1991). The Court therefore finds that it has jurisdiction to consider Plaintiff's motion for injunctive relief.

### b.    Claim Against Defendant Olympic

The Court also concludes that Plaintiff has shown a high likelihood of success on the merits of its PACA Trust claim against Defendant Olympic.

In order to assert a valid PACA trust claim against Defendant Olympic, Plaintiff must establish that: "(1) it qualifies for protection under PACA as a produce supplier; (2) it provided the requisite notice of intent to preserve its interest in the statutory trust; and (3) the defendant acted inconsistent with its duty to maintain the trust and ensure any assets held in trust were freely available to fulfill any outstanding obligations to trust beneficiaries." *Midwest Mktg.*, 6 F. Supp. 3d at 848 (citing 7 U.S.C. § 499 *et seq.*); see also *Anthony Marano Co. v. MS-Grand Bridgeview, Inc.*, 2010 WL 5419057, at *5 (N.D. Ill. Dec. 23, 2010).

### i.    Plaintiff is a Produce Supplier

Plaintiff has demonstrated that it is a PACA-licensed supplier of produce. [See 8, Exhibit E (Epic PACA License).] Plaintiff has also demonstrated that the transactions set out the complaint fall within the purview of the PACA because they involve perishable agricultural commodities that traveled through interstate commerce. See 7 U.S.C. § 499b; see also *Spada Properties*, 121 F. Supp. 3d at 1077 n.2 (noting that a valid PACA Trust claim must relate to perishable agricultural commodities that traveled through interstate commerce).

### ii.    Plaintiff Provided the Requisite Notice of Intent

Plaintiff has also made a sufficient showing that it provided the requisite notice of intent to preserve its interest in the PACA Trust. As a licensee under the PACA, Plaintiff is eligible to use the invoice method set out in 7 U.S.C. § 499e(c)(4) to provide this notice. See *Ebro Foods*, 449 B.R. at 763. Plaintiff has provided its invoices for each of the sales it made to Defendant Olympic. [1, Exhibit A (Epic Invoices)]. Nothing indicates that these invoices are not Plaintiff's "ordinary and usual" invoices. See 7 C.F.R. § 46.46(a)(5) (defining "ordinary and usual billing or invoice statements" as "communications customarily used between parties to a transaction in perishable agricultural commodities in whatever form, documentary or electronic, for billing or invoicing purposes"). Each invoice contains the necessary language set out in 7 U.S.C. § 499e(c)(4) to preserve Plaintiff's trust eligibility. [See 1, Exhibit A (Epic Invoices).] Each invoice also states that the "Sale Terms" are "PACA 10," [see *id.*], which represents Plaintiff's sale of produce to Defendant Olympic on 10-day payment terms. [See 7 at 7.] This fulfills the other requirement to retain eligibility as a PACA Trust beneficiary, namely, to sell produce to a buyer on a short-term credit basis. See 7 C.F.R. § 46.46(e)(2); *P.L.U.S. Brokerage*, 908 F. Supp. 2d at 715.

Defendants heavily dispute Plaintiff's position as a PACA Trust beneficiary. The lynchpin of Defendants' position is that all of the sales Plaintiff made to Olympic are subject to contractual terms, completely separate and apart from anything listed on Plaintiff's invoices, that do not implicate the PACA. Specifically, Defendants contend that the terms of the parties' agreement are those agreed to between Cardenas and Doumouras when they negotiated these transactions over the telephone and sent price quotes via e-mail. According to Defendants, none of the e-mails between the parties include payment terms because the parties previously agreed that Plaintiff would be paid as payments from Defendant Olympic's customers were collected.

[30-1 (Supplemental Doumouras Declaration), ¶ 6.] Defendants also contend that these e-mails are "evidence of pre-sale written agreements, whereby the parties agreed to indefinite and uncertain payment terms exceeding ten days." [30]; see also [30-1 (Supplemental Doumouras Declaration)]. Finally, Defendants argue that the invoices that Plaintiff sent could not govern these transactions because they are unenforceable under state contract law. None of Defendants' arguments in support of their position overcome Plaintiff's showing of a reasonable likelihood of success on the merits of its PACA claim against Olympic.

The PACA unquestionably applies to the transactions between the parties. Because this case is premised on the Court's federal question jurisdiction, federal law controls. See 7 U.S.C. § 499e(b), (c)(5); *Mrs. Condies Salad Co., Inc. v. Colorado Blue Ribbon Foods, LLC*, 858 F. Supp. 2d 1212, 1216–17 (D. Colo. 2012). Therefore, "the validity of contracts to sell perishable agricultural commodities in interstate commerce is to be determined by the federal act and the regulations issued under it to the extent that they are applicable." *Rothenberg v. H. Rothstein & Sons*, 183 F.2d 524, 526 (3d Cir. 1950); see also *S & S Packing, Inc. v. Spring Lake Ratite Ranch, Inc.*, 2017 WL 3049402, at *3 (11th Cir. July 19, 2017) ("[W]hen PACA is silent on a matter, state law provides the rule of decision.").

Furthermore, Defendants do not dispute that Defendant Olympic is a PACA-licensed produce dealer and, thus, subject to the provisions of the statute and its implementing regulations. See [8, Exhibit F (Olympic PACA License)]; see also [17 at 7] (mentioning Olympic's PACA license); [31, Exhibit A (USDA Administrative Complaint)] (proceeding regarding Olympic's PACA license). The statute states that the PACA Trust arises in "all transactions" when perishable agricultural commodities are "received by a commission merchant, dealer, or broker," 7 U.S.C. § 499e(c)(2), as long as the seller properly preserves its

trust rights. 7 U.S.C. § 499e(c)(3); see also *Ebro Foods*, 449 B.R. at 762 ("PACA trust rights are *automatically granted* when perishable commodities are bought on credit, but *can be lost* if not preserved by the seller.") (emphasis added); *Heeren, LLC v. Cherry Growers, Inc.*, 2015 WL 9450851, at *2 (W.D. Mich. Dec. 23, 2015) ("The trust automatically arises in favor of a produce seller upon delivery of produce and is for the benefit of all unpaid suppliers or sellers involved in the transaction until full payment of the sums owing has been received.") (quoting *In re Milton Poulos, Inc.*, 947 F.2d 1351, 1352 (9th Cir. 1991)). Defendants' transactions involving perishable agricultural commodities in interstate commerce thus automatically fall within the purview of the PACA Trust provisions.

The failure of Cardenas and Doumouras to specifically reference the PACA in the e-mails that Defendants have presented to the Court does not mean that PACA does not govern these transactions. The PACA provides certain default terms for transactions within its purview if the parties do not have separate express agreements as to those terms. See 7 C.F.R. § 46.46(e)(1) (parties who elect to use terms for prompt payment that are different than the default terms must reduce their agreement to writing prior to the transaction if those terms are to supplant the default prompt payment period).[6]

These e-mails simply do not appear to represent such an express agreement to different terms for prompt payment between the parties. Parties are of course free to undertake transactions that are out of the purview of the PACA's statutory trust provisions by making such express agreements. See *Spada Properties*, 121 F. Supp. 3d at 1081 ("PACA does not prohibit sellers from selling some goods under PACA's terms and other goods outside of them."). This

---

[6] Defendants citation to *Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794 (7th Cir. 2000), is thus inapposite because that case did not involve a federal statute regulating the transaction between the parties in the same manner that the PACA does. *Id.* at 805.

can be accomplished if a seller agrees to a time for payment of more than 30 days prior to a transaction. 7 C.F.R. § 46.46(e)(2); *Spada Properties*, 121 F. Supp. 3d at 1081; *Ebro Foods*, 449 B.R. at 763. But only a *written* pre-transaction agreement is sufficient to accomplish this. See 7 C.F.R. § 46.46(e)(1); *Patterson*, 307 F.3d at 669 ("[A]n oral agreement for an extension or a course of dealing allowing more than 30 days for payment will not abrogate a PACA trust."); *Sutherland Produce Sales*, 2017 WL 782281, at *7–9 (noting that "[t]he majority of courts have adopted a broad view of the writing requirement, holding that a non-written extension of the default payment term has no effect under PACA" and concluding that this is the "better interpretation" because the PACA's statutory and regulatory language "go out of their way to make clear that a seller will be eligible for trust protection only if it uses the 10-day default term or modifies that term in writing to some other term of 30 days or fewer"); *King v. Hartford Packing Co., Inc.*, 189 F. Supp. 2d 917, 927 (N.D. Ind. 2002) (holding that oral agreements extending time for prompt payment are ignored for purposes of determining whether PACA Trust rights have been properly preserved) (citing *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 782 (8th Cir. 1991)). Although Defendants argue that the parties "left the payment terms blank to confirm the parties' understanding that payment would be made as the produce were sold," [35 at 11], in reality, none of the e-mails that Defendants have presented to the Court contain any discussion whatsoever of payment terms, [30-1 (Supplemental Doumouras Declaration)].

Other courts have not found any PACA Trust issues in situations where the parties engaged in negotiations regarding the sale of produce via informal conversations, then used the invoice method to perfect PACA Trust rights. See, *e.g.*, *Sutherland Produce Sales*, 2017 WL 782281, at *6–8 (finding that Plaintiff had perfected its PACA Trust rights using the invoice

method where parties had negotiated for the sale of produce via email or text between employees of each, because there was no written agreement extending the payment term beyond the 30-day limit); *P.L.U.S. Brokerage*, 908 F. Supp. 2d at 716–17 (concluding that plaintiffs had used the invoice method to invoke PACA Trust protection where invoices were sent either at the time of shipment or within three days of shipment); *In re Dixie Produce & Packaging, L.L.C.*, 368 B.R. 533, 536–38 (Bankr. E.D. La. 2007) (holding that plaintiff had preserved its PACA trust claim, despite the defendant's argument that the parties had an oral agreement and/or a course of dealing to extend payment terms beyond 30 days, because no agreement was ever reduced to writing). When the parties do not have a pre-transaction written agreement as to payment terms, the PACA supplies such terms. See *P.L.U.S. Brokerage*, 908 F. Supp. 2d at 717–18 ("Chesser's invoices do not state payment terms and, thus, include the statutory ten day payment period."). These e-mails thus do not appear to represent a pre-transaction written agreement to extend credit beyond 30 days, as the PACA and its implementing regulations require.[7]

Defendants also argue that "even though Olympic never tendered a single payment within 10 days of delivery, it kept extending credit for five months." [17 at 11.] To the extent that this is an argument that the parties had a post-default agreement to extend payment beyond 30 days, this argument fails because the PACA implementing regulations expressly provide that "[i]f there is a default in payment * * * the seller, supplier, or agent who has met the eligibility

---

[7] Defendants' argument on this point appears to have changed over time. Before arguing that the e-mails between the parties were evidence of a written agreement to terms of credit extending beyond 30 days, Defendants argued in their opposition brief that, when Defendant Doumouras placed orders with Plaintiff over the phone, "Olympic understood the agreement to mean that Epic would be paid as Olympic received payments from its customers." [17 at 2]; [17 Ex. 2 (Doumouras Declaration), ¶ 7]. To the extent Defendant is relying on a course of dealing or an oral agreement between the parties to support its argument that the parties agreed that these transactions would not be subject to the PACA, this argument fails because any pre-transaction agreement on this point must be in writing to be valid. See 7 C.F.R. § 46.46(e)(1); *Patterson*, 307 F.3d at 669; *Sutherland Produce*, 2017 WL 782281, at *9.

requirements of paragraphs (e)(1) and (2) of this section will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment." 7 C.F.R. § 46.46(e)(3); *C.H. Robinson Worldwide, Inc. v. Auster Acquisitions, LLC*, 2011 WL 3159155, at *2 n.2 (N.D. Ill. July 26, 2011).[8]

### iii. Olympic Acted Inconsistently with its Duty to Maintain the Trust

Finally, Plaintiff has made a sufficient showing that Defendant Olympic has acted inconsistently with its duty to maintain the PACA Trust. Olympic is "required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1). Any act inconsistent with this requirement, "including dissipation of trust assets," is a violation of the PACA. 7 C.F.R. § 46.46(d)(1). The regulations define "dissipation" to include "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of

---

[8] In their sur-reply, Defendants also raise the argument that, even if PACA is applicable to these transactions, "it is well settled that trust on perishable goods disappears as the goods perish," [35 at 1], and therefore any obligation Olympic has to pay Plaintiff is merely a personal debt. [*Id.*] (citing *In re Zois*, 201 B.R. 501, 509 (Bankr. N.D. Ill. 1996)). This argument misstates the purpose of the PACA Trust. Congress added the PACA Trust provisions to the statute in 1984 to expressly give produce sellers greater protection "in the wake of a sharp increase in defaults among buyers." *Am. Banana Co.*, 362 F.3d at 37 (citing H.R. Rep. No. 98–543, at 3 (1983), reprinted in 1984 U.S.C.C.A.N. 405, 406). Sellers needed this protection because "[i]f buyers defaulted, sellers could look only to the commodities (which would have perished) or to the sales proceeds of the commodities" as unsecured creditors prior to the amendments. *Id.*; see also *Patterson*, 307 F.3d at 669 ("A perishable goods dealer could of course take an Article 9 secured interest in its produce, but as these items are usually sold and consumed rapidly and spoil quickly, that interest would not really be worth the bother."); *Superior Sales*, 2013 WL 214251, at *1 ("[I]t's futile to repossess rotting vegetables."). This is why the PACA both creates a statutory trust in favor of unpaid sellers in produce under which the buyer holds the produce, as well as any proceeds and receivables from the produce, in trust for the benefit of the seller and gives unpaid sellers a superior secured interest in those trust rights when perfected. 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b); *Patterson*, 307 F.3d at 669. That trust does not disappear once the goods perish but remains in existence "until full payment of the sums owing in connection with such transactions has been received" by the unpaid sellers. 7 U.S.C. § 499e(c)(2). In *Zois*, the case that Defendants cite for this proposition, there was a suggestion that some of the produce involved in the transactions was spoiled and unmarketable. *Zois*, 201 B.R. at 509. This has not been alleged here.

unpaid suppliers * * * to recover money owed in connection with produce transactions."
7 C.F.R. § 46.46(a)(2); see also *Anthony Marano*, 2010 WL 5419057, at *11 (PACA trustee
dissipated trust assets when he used trust funds to pay other creditors); *Baginski Potato Co., Ltd.
v. Custom Cuts Fresh, LLC*, 2011 WL 1807332, at *1 (E.D. Wis. May 10, 2011) (dissipation of
trust assets occurs where "the buyer has sold the produce and is in the process of using the
proceeds for purposes other than paying the supplier").

Plaintiff has shown that Defendant Olympic has not paid a substantial amount of the
principal balance owed on the produce that Plaintiff sold to Olympic.  [See 8 (Cardenas
Declaration), ¶ 16.]   Failure to pay promptly is itself a violation of the PACA.  7 U.S.C.
§ 499b(4).  Plaintiff has further presented evidence of Olympic's financial distress, including
several bounced checks that were sent to Plaintiff, Olympic's representations that it has made
attempts to obtain a small business loan in order to pay Plaintiff, and Olympic's repeated broken
promises to Plaintiff that payment would be forthcoming.  [8 (Cardenas Declaration), ¶¶ 24–36];
[23 at 6].   This inability to pay Plaintiff indicates that Olympic has failed to maintain the PACA
Trust assets, also a PACA violation.  7 U.S.C. § 499b(4).

Defendants dispute that Olympic is in financial distress and maintains that Olympic
intends in good faith to continue making payments to Plaintiff as it receives payments from its
own customers.  [17 at 11.]   However, the paltry evidence to the contrary submitted to date by
Defendants does not rebut Plaintiff's showing.  Doumouras asserts that Defendant Olympic is
profitable, not in financial distress, and does not intend to seek bankruptcy protection.  [17,
Exhibit 2 (Doumouras Declaration), ¶¶ 3, 9–10.]   Without more, these largely unsupported
assertions do not rebut the evidence that Plaintiff has submitted including, for example, e-mails
from Doumouras indicating that Olympic is seeking a new line of credit and has recently lost two

large customers and e-mails indicating that Olympic recently sent several bounced checks to Plaintiff. [8 (Cardenas Declaration) Exhibit G at 9]; [*Id.* Exhibit I.] Notwithstanding the Court's order to provide an accounting, the limited financial information that Defendants have submitted at this point does not provide anything remotely resembling a clear picture of Olympic's financial state. Moreover, the administrative proceeding that has been filed against Defendant Olympic by the USDA, which Defendants brought to the Court's attention, lends at least some credence to Plaintiff's contentions. [See 31, Exhibit A (USDA Administrative Complaint).] While no action has been taken against Olympic thus far, the Department's initiation of the proceeding raises concerns that Defendant Olympic may not be properly maintaining trust assets for the benefit of unpaid sellers of produce.[9]

The Court therefore concludes that Plaintiff has shown a reasonable likelihood of success on the merits of its PACA Trust claim against Olympic.

### c.    Claim Against Defendant Doumouras

Plaintiff has also shown a reasonable likelihood of success on the merits of its claim against Defendant Doumouras. Several circuits have held that the PACA statutory trust provision allows a plaintiff to recover against both a corporation and its controlling officers for breach of fiduciary duty. See, *e.g.*, *Weis-Buy Svcs., Inc. v. Paglia*, 411 F.3d 415, 421–22 (3d Cir. 2005); *Golman-Hayden Co., Inc. v. Fresh Source Produce*, 217 F.3d 348, 351 (5th Cir. 2000). The Seventh Circuit has likewise indicated, albeit in dicta, that such an action may be maintained. *Patterson*, 307 F.3d at 669 (citing *Golman-Hayden*, 217 F.3d at 351). To determine personal liability, a court must determine: (1) whether an individual's involvement with the

---

[9] For the first time in their supplemental briefing, Defendants argue that Plaintiff has failed to join necessary parties, specifically one of the claimants in this USDA proceeding, as required by Federal Rule of Civil Procedure 19. [See 35 at 9.] The Court will not consider this argument in ruling on the TRO motion because it was raised for the first time in reply. See *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 2017 WL 2178504, at *5 (N.D. Ill. May 16, 2017).

company was sufficient to establish a legal responsibility; and (2) whether the individual breached a fiduciary duty to the PACA creditors. *Shepard v. KB Fruit & Vegetable, Inc.*, 868 F. Supp. 703, 705–06 (E.D. Pa. 1994); *see also Midwest Mktg.*, 6 F. Supp. 3d at 851 (finding individual personally liable for PACA violations where he "was in a position of control over the PACA trust and was responsible for ensuring that the PACA trust assets were not dissipated").

Here, Plaintiff argues that Defendant Doumouras (1) is President of Olympic; (2) is listed on the PACA license as a principal; (3) controls the daily operations of Defendant Olympic; and (4) apparently signed the checks that Defendant Olympic has used to pay Plaintiff. [7 at 9.] Defendants do not respond to this portion of Plaintiff's motion.

The Court finds that Plaintiff has sufficiently demonstrated Doumouras's personal liability for the PACA Trust. As discussed above regarding Defendant Olympic, Plaintiff has sufficiently shown that Defendant Olympic is breaching its duty to maintain the assets of the PACA Trust. Regarding his involvement with the company, Doumouras does not dispute that he is Olympic's President. [17, Exhibit 2 (Doumouras Declaration), ¶ 3.] Moreover, Defendants' filings indicate that Doumouras is significantly involved with the day-to-day management of Olympic. See [17 Exhibit 2 (Doumouras Declaration)]; [30-1 (Doumouras Supplemental Declaration)]. Therefore, Plaintiff has shown a reasonable likelihood of success on the merits on its PACA Trust claim against Doumouras individually.

### 2. Irreparable Harm and No Adequate Remedy at Law

Plaintiff has demonstrated that it will suffer irreparable harm without a TRO and that it has no adequate remedy at law. As discussed above, Plaintiff has sufficiently shown that Defendants are dissipating trust assets because they have both failed to pay Plaintiff a significant sum of the balance owed and they have showed continued signs of financial distress. "[O]nce

the PACA trust is dissipated, it is almost impossible for a beneficiary to obtain recovery." *Superior Sales*, 2013 WL 214251, at \*2 (quoting *Tanimura & Antle*, 222 F.3d at 139); *see also Continental Fruit Co.*, 774 F. Supp. at 453 (irreparable harm found where, without court intervention, plaintiff had no assurance that trust assets would not be dissipated). Defendants argue there is no irreparable harm here as Plaintiff's harm can be rectified by a final money judgment after trial, and Plaintiff can claim the reasonable value of its produce. [17 at 10.] This argument fails to recognize, however, that the PACA "alters the terrain substantially" because Congress specifically singled out those in Plaintiff's position for "special protection with the PACA statute." *Continental Fruit Co.*, 774 F. Supp. at 453. *See also Tanimura & Antle*, 222 F.3d at 139 (no adequate remedy at law exists where "the likelihood is great that there will be no funds available to satisfy a legal judgment against the delinquent buyer"); *Ergo Produce, Inc. v. CPH Serv.*, 2013 WL 12101143, at \*2 (S.D. Fla. Jan. 7, 2013) (plaintiff would suffer irreparable harm if defendants could not satisfy a legal judgment on a PACA claim); *Heartland Produce Co. v. Kazmer, Inc.*, 1996 WL 680009, at \*2 (N.D. Ill. Nov. 21, 1996) (plaintiff sufficiently established irreparable harm for which there is no adequate remedy at law to justify an injunction in PACA action).

### 3. Balancing of Irreparable Harm to the Parties

Because Plaintiff made the requisite threshold showing, the Court will move to the second stage of the TRO analysis. *Turnell*, 796 F.3d at 662. The Court finds that the balance of harms favors Plaintiff. As discussed, Plaintiff has shown that it will suffer irreparable harm for which there is no adequate remedy at law in the absence of injunctive relief. Defendants, by contrast, will not suffer any significant hardship if a TRO is entered. The TRO "only requires

Defendants to do that which they are required to do under the statute, *i.e.*, maintain the trust required by statute." *Superior Sales*, 2013 WL 214251, at *2.

Defendants argue that the requested TRO will cause them irreparable harm because it will injure their goodwill with bankers, suppliers, and customers; it will force Olympic to divulge its customer lists, without adequate protection; it will hamper Defendants' ability to defend this lawsuit; and it will cripple Olympic's operations, thereby making it difficult to timely sell its other suppliers' perishable goods. [17 at 14.] These potential harms to Defendants do not outweigh the potential harm to Plaintiff if the trust assets are dissipated especially considering the high likelihood of success on the merits that Plaintiff has demonstrated. The parties can agree to a protective order to govern the confidentiality of Defendants' customer lists. The other potential harms that Defendants do not overcome the paramount "special protection" that Plaintiff receives under the PACA statute. *Continental Fruit Co.*, 774 F. Supp. at 453; see also *Foodcomm Int'l*, 328 F.3d at 303 (the greater the movant's likelihood of success, "the less strong a showing" the movant "must make that the balance of harm is in its favor").

### 4. Effects on Non-Parties

The PACA trust provisions were specifically enacted "to remedy such burden on commerce in perishable agricultural commodities [resulting from non-payment by buyers] and to protect the public interest." 7 U.S.C. § 499e(c)(1). The Court therefore finds that the public interest will be served by preventing Defendants' dissipation of the PACA Trust assets that they are required to maintain.

### C. Bond

Having concluded that a TRO is appropriate, the Court must determine the issue of bond. According to Federal Rule of Civil Procedure 65(c), a court may issue a temporary restraining

order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); see also *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (noting that a district court has "wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm") (internal quotation marks and citation omitted); *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("'[T]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'") (citation omitted). Plaintiff argues that it should not have to post a bond in connection with its motion because doing so would frustrate enforcement of federal law. [7 at 19.] Defendants, in turn, request entry of an order requiring a bond of at least $250,000. [17 at 15.]

The case law indicates that a "district court can require a bond of nominal amount in appropriate cases," *Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 391 (7th Cir. 1983), provided that the amount of the bond adequately serves the purposes of Rule 65(c), and thus takes into account "defendant's demand for a bond to reimburse it for any injury it may improperly suffer as a result of an erroneous grant of the preliminary injunction." *Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 54 (7th Cir. 1980). Considering the respective positions of the parties, the high likelihood of success on the merits that Plaintiff has demonstrated, and Defendants' acknowledgement that they owe Plaintiff approximately $200,000, the Court will impose a nominal bond of $1,000.00.[10]

## III.    Defendants' Motions

### A.    Motion for Stay

---

[10] In their supplemental briefing, Defendants included a request that "any adverse decision for injunctive relief against them be stayed pending appeal." [35 at 15.] The Court will deny this request as no basis was provided for it.

Defendants have moved for a stay of this case pending the resolution of the administrative action pending before the USDA filed on November 3, 2017. [See 28.] Defendants argue that a stay is necessary to conserve resources, preserve the stability of the produce market in Illinois, and avoid conflicting decisions by the USDA and this Court. [28 at 3]; [35 at 13]. Plaintiff opposes this motion, arguing that there is no basis for the Court to exercise its discretion to grant a stay. [31 at 5.]

Upon review of the USDA Administrative Complaint, [see 31, Exhibit A], the Court concludes that there is no basis to issue a stay of this case based on the administrative action. The complaint initiates a disciplinary proceeding against Olympic, alleging that Olympic has "failed to make full payment promptly to four (4) sellers for 108 lots of perishable agricultural commodities." [31, Exhibit A (USDA Administrative Complaint), III.] The complaint requests an order that Olympic's PACA license be revoked. [*Id.*] The administrative complaint does not reference the PACA Trust. The parties do not contend that Plaintiff is one of the four sellers referenced in the administrative complaint. Therefore, there is little danger of conflicting decisions or of duplicative efforts in the two cases that would warrant a stay of this action. As such, the Court declines to issue an order staying this case.

**B.    Motion for Extension of Time to Answer or Otherwise Plead**

Defendants have also filed a motion for extension of time of 21 days to answer or otherwise plead to the complaint [29]. Defendants answer is currently due on December 18, 2017, and therefore their request would make their answer due on January 8, 2018 instead. Defendants represented that this request was unopposed, [see 29], but Plaintiff responded [31 at 2] that it did oppose the extension and argued that the request was made for the improper purpose of delay.

Because (1) Defendants already have already filed several briefs setting out their contentions as to the key matters at issue in this case and (2) a TRO will be entered in this case, Plaintiff will suffer little or no prejudice from this extension of time. The Court will therefore grant Defendants' motion [29].

### C.      Motion for Extension of Time to Gather Financial Status Information

Defendants also move [34] for an order granting them an extension of a reasonable time to provide the Court with the necessary information to assess Olympic's financial status. Plaintiff has opposed this motion [38]. The Court will grant this request. As discussed, because a TRO will be issued in this case, Plaintiff will suffer little prejudice from receiving this information at a later date and the parties as well as the Court will benefit from a comprehensive presentation, rather than the piecemeal presentation that has been tendered to date. The Court believes that a deadline of December 21, 2017—exactly a month after the initial hearing on the TRO—to produce this information is more than reasonable. That deadline gives as much time as possible to Defendants to put together a complete response while permitting (1) the parties to take this information into account in any supplemental briefs they may choose to file and (2) the Court an opportunity to review the information and the parties' supplemental briefs prior to the preliminary injunction hearing.

Defendants have included in this motion a request that the court "order Plaintiff to produce its financial information to demonstrate that it would be unable to continue to do business if injunctive relief is not issued." [34 at 2.] The Court will deny this request as no basis has been provided for it. Moreover, neither the PACA nor Rule 65 require the supplier/moving party to demonstrate financial extremis on top of all of the other requirements that must be satisfied to qualify for injunctive relief.

## IV. Conclusion

For these reasons the Court grants Plaintiff's motion for a TRO [6], denies Defendant's stay motion [28], and grants Defendant's motions for extensions of time [29, 34]. The terms of the TRO are set out at the end of this opinion. In addition, as explained above,

● The time for Defendants to answer or otherwise plead is extended to January 8, 2018; the time for Defendants to provide a full and complete accounting is extended to December 21, 2017.

● The parties are directed to confer on a proposed protective order and to transmit to the Court's Proposed Order Box (Proposed_Order_Dow@ilnd.uscourts.gov) an agreed protective order (preferred) or their respective proposed orders (if agreement is not reached) no later than December 11, 2017.

● Once a protective order is in place, Defendant Olympic must provide all of the financial information that it wishes to submit in compliance with the Court's order for an accounting to Plaintiff, subject to the terms of the protective order.

● The case is set for a preliminary injunction hearing on January 3, 2018 at 10:30 a.m. If the parties wish to extend the TRO by agreement, they may do so and request a later date for the preliminary injunction hearing.

● Any supplemental briefs in support of or in opposition to Plaintiff's motion for a preliminary injunction must be filed by December 28, 2017.

● To the extent that either side wishes to present live testimony—as opposed to using affidavits to submit their factual contentions—the parties must file a joint status report no later than noon on January 2, 2018, identifying any witnesses they propose to call, the subject matter of the witness' testimony, and an estimate of the length of the direct examination.

Finally, IT IS HEREBY ORDERED that Plaintiff's motion [6] for a TRO is granted as follows:

1.      Defendants and their agents, subsidiaries, successors, bankers (including but not limited to JPMorgan Chase Bank, N.A. as to any accounts or property of the Defendants in this bank's possession), factors, assignees, principals, assignors, employees, directors, shareholders, officers, attorneys and persons acting in concert with them, are hereby restrained and prohibited, under the Court's power of contempt, from engaging in, committing, or performing, directly or indirectly, any or all of the following acts or activities:

(a)      Removing, withdrawing, transferring, concealing, paying, assigning, or selling to any other person or entity, the proceeds from the sales of any or all existing and future inventories of food, including but not limited to inventory on hand, perishable agricultural commodities, commodities, and/or other products derived therefrom including frozen foods or agricultural commodities, and/or receipts of payments and sales proceeds for such commodities sold prior to the date of this Order, and/or otherwise disposing of the corporate assets, books or funds of the Defendant Olympic or any person or entity or who is holding PACA Trust assets of Olympic;

(b)      Transferring, withdrawing, or in any other manner removing PACA Trust assets, including funds on deposit in banking, money market, certificate of deposit, debt, operating, business, personal, or other accounts held by, in the name of, or on behalf of Olympic or Nicholas Doumouras at any and all banking institutions, from Defendants' banking accounts, including but not limited to all of Defendants' accounts held at JPMorgan Chase Bank, N.A. (including but not limited to Chase account number XXXXX7937) and any other accounts

subsequently discovered to be in any of Defendants' names or in which they have a beneficial interest; and

(c)     Taking any other action whatsoever which causes, has the effect of causing, or which otherwise could or would dissipate the PACA Trust assets of Olympic or make such PACA Trust assets less available to pay Epic, as a qualified beneficiary of the PACA Trust, including any action or inaction which would violate the PACA, 7 U.S.C. § 499e(c)(1)-(4) and 7 U.S.C. § 499b(4); and

(d)     Nothing in this Order shall prevent, restrain, or prohibit the Defendants from liquidating and selling all perishable food and perishable agricultural commodities in inventory or in transit to customers so long as: (i) all sales are made in the ordinary course and at reasonable market prices, (ii) are not made to any person or entity affiliated or associated with the Defendants, (iii) the Defendants obtain and maintain for inspection and copying by the Plaintiff and its counsel all record related to all such sales, (iv) no sales are made for cash payment, (v) all payments on such sales are held by the Defendants in trust and not transferred or deposited in any account without the prior written consent of Plaintiff's counsel; and (vi) sales may be made through brokers so long as sales are made at reasonable market prices and such broker shall be allowed a commission payment in an amount reasonable and customary in the produce industry.

(e)     Furthermore, nothing in this Order shall prevent, restrain, or prohibit the Defendants from depositing, or the Defendants' bankers from accepting any deposits, of cash, checks, wires, or electronic transfers of payments payable to Defendant Olympic in any bank account of Olympic so long as Defendants account to Plaintiff's counsel within 24 hours of each deposit by identifying the amount of the deposit, the source, and the name and account number

for each bank, and the date for each deposit.

IT IS FURTHER ORDERED that Defendants, their partners, officers, directors, managers, bankers, agents, subsidiaries, successors, assignees, principals, assignors, attorneys and persons acting in concert with them, shall within one business day after being served with this Order deposit into the trust account of Plaintiff's counsel, Teeple Leonard & Erdman, Attorneys at Law, 111 W. Jackson Boulevard, Suite 1700, Chicago, Illinois 60604-3597, PACA Trust assets in the amount of at least $189,380.47, as the amount of Epic's PACA Trust claim with interest through November 10, 2017.

IT IS FURTHER ORDERED that in the event Defendants fail to timely deposit funds to described above, Defendants shall be and hereby are required and ordered to do the following:

1. By December 21, 2017, account to Plaintiff's counsel for all brokerage and bank accounts holding any PACA Trust assets of Olympic or into which accounts any PACA Trust assets were deposited from November 15, 2016 to the current date and within that time period to provide the following information to Plaintiff's counsel: (i) account number, (ii) name and location of the financial institution, (iii) type of account; (iv) name and contact information for the contact person at the financial institution; (v) current balance in the account; and (vi) all name(s) on the account.

2. Account by December 21, 2017 to Plaintiff's counsel for all payments, including checks and wire transfers, received by the Defendants for any sales by Olympic to any customer by providing copies of the check and identification information as to each wire transfer.

3. Within 24 hours and on an ongoing basis moving forward, deliver all cash in the possession, custody, or control of the Defendants that constitutes PACA Trust assets to Plaintiff's counsel in Chicago, Illinois and Plaintiff's counsel shall promptly deposit such cash in

the firm's trust account and maintain a record of each such deposit.

4.     If the Defendants' banks will not accept deposit of any checks payable to Defendants, which checks represent monies that are PACA Trust assets, the Defendants shall as to any checks in their possession or obtainable by the Defendants upon demand, of that the Defendants later obtain, endorse any checks payable to the trust account of Teeple Leonard & Erdman, and shall deliver such endorsed checks to the Plaintiff's counsel within one business day of the Defendants' receipt of them.

5.     By December 21, 2017, the Defendants shall provide to Plaintiff's counsel legible copies of all of the following documents: (i) the current accounts payable report for Defendant Olympic and all related and subsidiary companies, if any; (ii) the current accounts receivable, including all aging, for Defendant Olympic and its related and subsidiary companies, if any; (iii) every bank account statement for each banking and brokerage account of Olympic and\or Mr. Doumouras or any account in which any PACA Trust assets were deposited from March 1, 2017 to the current date (with the Defendants to provide online updated statements for all activity in the account from the date of the last monthly statement up to 24 hours after their receipt of this Order; (iv) copies of every check (back and front) paid, withdrawal, or wire transfer from each of the foregoing accounts from March 1, 2017 and the check registers showing the payee, check number, and payment amount for each payment from each of these accounts; (v) Olympic's last filed Federal Income Tax return; (vi) all applications for loans, credits, and credit lines submitted by Olympic to any lender or financial institution from March 1, 2017, and all communications with each such entity related to the status of any financing to be provided to the Defendants; (vii) Olympic's current financial statements including its income statement, balance sheet, and statement of cash flows; (viii) a listing of all food and perishable agricultural commodities in

Olympic's inventory by date of receipt, type, quantities, condition, and location; (ix) all cash on hand or previously received and not deposited in any bank account, which cash was generated by the sale of PACA Trust assets; (x) a copy of each mortgage and the last mortgage statement(s) for each mortgage encumbering the home at 33W571 White Thorne Road, Wayne, Illinois 60184-2225; (xi) copies of all bank account statements into which any PACA Trust assets were deposited and from which funds were paid to purchase the home at 33W571 White Thorne Road, Wayne, Illinois 60184-2225, pay any mortgage on the home, and\or pay for any improvements on the home, from the time the land and\or home was purchased up to the present date; (xii) any and all land trust agreements whereby Nicholas Doumouras has any beneficial interest in this home; and (xiii) the last filed Federal Income Tax return of Nicholas Doumouras.

6.     By December 21, 2017, the Defendants are each to provide to Plaintiff's counsel an affidavit or declaration under oath that identifies all known PACA Trust assets, and their current location, to the extent any such asset is not expressly identified in the foregoing documents the Defendants produce to Plaintiff's counsel.

IT IS FURTHER ORDERED that the Defendants may, at any time, move to dissolve this Temporary Restraining Order in compliance with Rule 65, Federal Rules of Civil Procedure.

The case is set for a preliminary injunction hearing on January 3, 2018 at 10:30 a.m. If the parties wish to extend the TRO by agreement, they may do so and request a later date for the preliminary injunction hearing.

IT IS SO ORDERED.


Dated: December 7, 2017
          4:00 p.m. CST

_____
Robert M. Dow, Jr.
United States District Judge