# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| EPIC FRESH PRODUCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-8381 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| OLYMPIC WHOLESALE PRODUCE, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Plaintiff Epic Fresh Produce, LLC's ("Epic") Motion for Ruling on Objections of the Olympic Defendants to Plaintiffs' Supplemental Claims and the PACA Trust Chart [248]. Epic's motion seeks the determination of what claims Epic, Kiko's Produce, Inc. ("Kiko's"), Twin Garden Sales, Inc. ("TGS"), Classic Fruit Company, Inc. ("Classic Fruit"), Tom Lange Company, Inc. ("TLC"), and Couture Farms ("Couture") (each individually a "PACA Claimant" and collectively "the PACA Claimants") may pursue under the Perishable Agricultural Commodities Act. Plaintiff's motion [248] is granted and the basis for the Court's rulings is set out below. The case is set for further status on January 15, 2019 at 10:00 a.m.

**I.   Background**

This case arises out of the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a *et seq.*, which was enacted to protect sellers of perishable agricultural commodities from unfair conduct by buyers of such commodities, including failure to promptly and fully pay for produce ordered. PACA creates a statutory trust in favor of sellers in produce sold to buyers (*e.g.*, grocery stores and certain agents), under which the buyer holds the produce and any proceeds and receivables derived from the produce in trust for the benefit of the seller. 7 U.S.C. §

499e(c)(2). In this case, the PACA Claimants sold perishable agricultural commodities to Defendant Olympic Wholesale Produce, Inc. ("Olympic"), and Olympic failed to pay for that produce.

On November 20, 2017, Epic filed this action naming Olympic and Nicholas Doumouras ("N. Doumouras") as defendants in a suit under PACA. [1.] After a period of significant litigation between the parties [see 1–185], Epic filed a second amended complaint on April 23, 2018 in which it named Olympic; N. Doumouras; Olympic, LLC; Olympic Wholesale Produce & Foods, Inc.; 765 Busse Highway Apartments, LLC; and Joanne Doumouras ("J. Doumouras") (collectively "the Olympic Defendants") as defendants. [186.] The second amended complaint also named Chicago Title Land Trust Company ("Chicago Title") and STC Capital Bank as defendants (all defendants collectively "the Defendants"). [*Id.*] Epic alleges that in addition to failing to pay for the produce it sold to Olympic, N. Doumouras and other Olympic Defendants misappropriated funds from the money and assets that PACA requires to be held in trust for the PACA Claimants ("the PACA Trust"). [*Id.* ¶¶ 17, 60–115.] Epic asserts that N. Doumouras and other Olympic Defendants used monies from the PACA Trust to make a wide variety of purchases and investments, including purchasing various properties that STC Capital Bank now claims an interest in and other property that Chicago Title holds in trust. [*Id.* ¶¶ 60–115.] Epic seeks to place a constructive trust on the property held or encumbered by STC Capital Bank and Chicago Title, and to compel the disgorgement of any appropriated funds from the Olympic Defendants. [*Id.*]

To determine what if any claims the PACA Claimants have on the money and property they claim comprise the PACA Trust, this Court entered its Order Establishing PACA Claims Procedure ("the Claims Procedure") on March 7, 2018. [127.] Pursuant to the Claims Procedure,

the PACA Claimants seeking to enforce their PACA trust rights against Olympic and the other Defendants seeking a share in the distribution of the assets in the PACA Trust filed claims with this Court. [See, e.g., 139–40; 156–57; 168–69.] The Olympic Defendants have filed various objections to the PACA trust claims. [See 226–228; 245.] STC Capital Bank did not file an objection pursuant to the Claims Procedure, but has taken the position in a status report [266] that "the PACA Claimants are not entitled to recover any of their fees in this case" based on the timing of the invoices and the original agreements between the PACA Claimants and Olympic. Because the PACA Claimants assert that Defendants have procedurally defaulted on a significant number of their objections, the Court provides a brief summary of the Claims Procedure.

The Claims Procedure required every party with a claim against the PACA Trust, or the Olympic Defendants related to the PACA Trust's assets, to file that claim by April 9, 2018. [127, ¶ 9.] Any party or person in interest who objected to any of those claims had to file that objection by April 30, 2018. [*Id.* ¶ 12.] An objector could not submit blanket objections to all claims. Rather, an objector was required to file a separate objection directed to each claimant whose claim it disputed. [*Id.*] The objections had to include the specific factual and/or legal grounds for why the claimant could not recover on its claim. [*Id.*] Additionally, the Claims Procedure required any objector to identify the dollar amount of the party's claim that was incorrect or otherwise improper. [*Id.*] The Claims Procedure also allowed for a limited amount of discovery regarding the factual basis for the PACA Claimants' claims in light of any objections. [See *id.* ¶¶ 15–18.] The Claims Procedure also warned that, absent a showing of good cause for the delay and substantial prejudice to the non-moving party, any late objections would be deemed "forever waived." [*Id.* ¶ 13.]

Absent an objection, any claim that met the Claims Procedure's requirements would be deemed "a valid, perfected, and eligible [claim] * * * against the PACA Trust Assets for the full

amount stated" in the claim. [*Id.* ¶ 14.] Likewise, if an objection challenged only a portion of a party's claim, the uncontested balance would be deemed "valid, perfected, and eligible" for payment. [*Id.*]

The Claims Procedure also allowed any claimants who believed that they were entitled to recover additional interest, costs, and/or attorneys' fees incurred after filing their initial claims to file an additional claim for such amounts by July 9, 2018. [*Id.* ¶ 19.] The Claims Procedure required any objectors to these supplemental claims to file their objections no later than July 23, 2018. [*Id.* ¶ 19.] Responses to any objections were due no later than August 7, 2018. [*Id.* ¶ 20.]

Following the submission of any supplemental claims, the Claims Procedure required counsel for Epic to file a chart by August 17, 2018, listing: (1) each person or entity having filed a PACA Proof of Claim; (2) the principal amount of the Claims, as well as interest, costs, and/or attorney's fees sought in the Claims; (3) the disputed and undisputed portions of each amount in each Claim; (4) the total amount of each Claim and all Claims together; and (5) the pro rata distribution of the PACA Trust Assets of each Claimant in proportion to the amount of all claims in this action. [*Id.* ¶ 17.] Any party who objected to any information in the chart had to file their objection "detailing the legal and/or factual basis for the [o]bjection." [*Id.* ¶ 23.] Parties that had previously raised objections to any claims were not required to re-raise them. [*Id.*] Any objection to the mere characterization of a claim as disputed or undisputed would not be treated as a valid objection to the chart nor delay or preclude an interim distribution approved by the Court. [*Id.*] If no party made a timely objection to the chart, "all figures, calculations, and information in the chart [would] be deemed conclusively determined as [to] any party not objecting." [*Id.*]

Finally, on or before September 4, 2018, the Claims Procedure commanded counsel for Epic "to file a Motion for Ruling to advise the Court of the ripeness for ruling on all Objections

and [ ] list by date of filing all outstanding Claims Objections, all Supplemental Claims Objections, all Responses to Objections, and all Objections to Claims Chart." [*Id.* at 24.] Following that filing, the Claims Procedure stated that the Court would take all the objections under advisement and resolve them based upon the record. [*Id.*] Counsel for Epic has made the requisite filing [248], the parties have complied with the Court's request for additional information [see 269], and the Court now rules on the disputed issues.

## II. Analysis

### A. The Produce Claims

It is undisputed that the PACA Claimants timely filed their initial claims as required by the Claims Procedure. [See 139 (Kiko's); 140 (Classic Fruit); 156 (TGS); 157 (Epic); 168 (TLC); 169 (Couture) ("the Initial Claims").][1] The Initial Claims sought (1) the amounts due to the PACA Claimants for the produce that they sold to the Olympic Defendants ("the Produce Claims") and (2) any claims for interest, attorney's fees, and/or costs. [See *id.*] No party—neither the original Defendants nor those added in the second amended complaint filed on April 23, 2018—filed any objection to the Initial Claims before the April 30, 2018 deadline.

In their Objections to the PACA Claims Chart [246] dated August 27, 2018, the Olympic Defendants "incorporated by reference" the objections they made in their Answer to Second Amended Complaint [194]. [246, at 1.] In their answer to the second amended complaint, the Olympic Defendants appear to object to portions of the Produce Claims. [See e.g., 194, ¶ 13 ("Defendants deny that the Produce they received from Epic had an invoiced price of $312,035.00 * * *."); *id.* ¶ 17 ("Defendants admit they have not paid Epic $180,705.90, but deny that they are

---

[1] One claimant, New Era Produce, L.L.C., who filed an initial claim [see 160–171], voluntarily dismissed its claim on May 15, 2018. [198.]

5

legally obligated to pay said amount.").] The Court concludes these objections to these Produce Claims are untimely and improper.[2]

First, the Olympic Defendants' objections were untimely and therefore barred. See e.g., *Classic Harvest LLC v. Freshworks LLC*, 2017 WL 2350212, at *15 n.24 (N.D. Ga. May 31, 2017) (holding defendant had waived any objections that it did not assert by the deadline laid out in the court's PACA claims procedure). The Olympic Defendants' answer to the second amended complaint was filed on May 7, 2018 [see 194], a week after any objections to the PACA Claimants' Initial Claims were due, [127, ¶ 128]. The objections therefore are presumptively time-barred unless the Olympic Defendants can demonstrate good cause for the delay, and that Epic would not be substantially prejudiced. [*Id.* ¶13.]

The Olympic Defendants have not offered any explanation for why they waited until August 28, 2018 to bring these "objections" to the attention of the Court and the PACA Claimants. Nor have the Olympic Defendants offered any explanation for why they did not file an objection to Epic's Initial Claim by April 30, 2018. The fact that the Olympic Defendants brought these objections to the attention of the Court and Epic at the very close of the Claims Procedure process strongly suggests that substantial prejudice would arise from allowing this objection. But even in the absence of substantial prejudice, the Olympic Defendants have not provided any good cause for their delay. The objection to Epic's Produce Claim is therefore time-barred.

Moreover, even if the Olympic Defendants' objections were not time-barred, they are improper and therefore invalid. As explained above, the Claims Procedure required that any

---

[2] Similarly, on September 14, 2018, the Olympic Defendants filed answers to the other PACA Claimants' Intervenor Complaints in which they denied various amounts sought by the other PACA Complaints. [See, e.g., 251, ¶ 7 (denying parts of TGS's fruit claim); 252, ¶ 12 (same as to TLS and Couture); 253, ¶ 7 (same as to Classic Fruit); and 255, ¶ 7 (same as to Kiko's).] Although the Olympic Defendants have not asserted that they properly objected to the Produce Claims of the other PACA Claimants, those objections suffer the same insufficiencies as those to Epic's Produce Claims.

objection to a Claimant's initial claim (1) "include specific factual and/or legal grounds" why an individual Claimant could not recover on its claim(s) and (2) identify the dollar amount of the claim that was incorrect or otherwise improper. [127, ¶ 12.] The Olympic Defendants' "objections" contain neither specific factual and/or legal grounds, nor the dollar amount of Epic's claim that they dispute. [See, e.g., 194, ¶ 16 ("Defendants deny that Olympic and Epic agreed on a price of $4,920.00 for invoice number 5891, but admit the balance of the allegations contained in this paragraph."); *id.* ¶ 17 ("Defendants admit they have not paid Epic $180,705.90, but deny that they are legally obligated to pay said amount.").] Rather, the Olympic Defendants offer mere conclusions that the Claims Procedure specifically warned were insufficient to state an objection. [*Id.* ¶ 23 ("An Objection to the characterization of a Claim as disputed or undisputed will not constitute a valid Objection * * *").] The Court may reject any claim or objection that fails to comply with the procedures set forth in its procedure to evaluate PACA claims. See e.g., *C.H. Robinson Worldwide, Inc. v. Auster Acquisitions, LLC*, 2011 WL 3159155, at *3 (N.D. Ill. July 26, 2011) ("Because Central Washington failed to comply with the Rescheduling Order and the Procedures Order or respond to these objections, this Court finds that Central Washington's claim is not valid."). The Court therefore rejects the Olympic Defendants' assertion that they have a made a valid objection to Epic's Produce Claim.

Consequently, the Court concludes that, at least as to the Olympic Defendants, all the PACA Claimants' Produce Claims [245-1, Col. 2], are valid, perfected, and eligible for payment.

**B.     Interest**

In their Initial Claims, each of the PACA Claimants sought to recover interest on their Produce Claims. Four of PACA Claimants—EPIC, Classic Fruit, Kiko's, and TGS—assert that they are contractually entitled to interest at an annualized rate of 18% on any outstanding invoices.

7

[See 139, at 3–4; 140, at 3–4; 157, at 4; 168 at 3–4.] The Court has confirmed that the four have included the appropriate contractual verbiage on their invoices. Two of the PACA Claimants—Couture and TGS—assert they are statutorily entitled to interest. [156, at 4; 169, at 3.]

1. **Contractual Interest**

PACA provides that in interstate transactions involving agricultural commodities, those commodities and their proceeds "shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, *until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers or agents*." 7 U.S.C. § 499e(c)(2) (emphasis added). Based on this statutory language, two circuits have explicitly held that a contractual obligation for interest may be awarded under PACA. *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004) (stating that the language in 7 U.S.C. § 499e(c)(2) "unambiguously encompasses not only the price of commodities but also additional related expenses * * * includ[ing] attorney fees and interest that buyers and sellers have bargained for in their contracts"); *Middle Mountain Land & Produce v. Sound Commodities*, 307 F.3d 1220, 1224 (9th Cir. 2002) ("it cannot be contended seriously that interpreting PACA claims to include contractual rights to attorneys' fees and interest under the 'in connection with' language of the statute is contrary to the statute's purpose").

As stated above, none of the Defendants in this matter filed timely, or proper, objections to the Initial Claims. Consequently, given the precedent cited above and the absence of any valid objections, the Court finds that EPIC, Classic Fruit, Kiko's and TGS are contractually entitled to an annualized interest rate of 18% on the outstanding Produce Claims.

## 2. Statutory Interest

The award of prejudgment interest in the PACA context is not mandatory, nor is the Court required to use the Illinois statutory rate. The question of whether to award prejudgment interest under PACA absent a contractual right, as well as the proper rate of interest, is left to the discretion of the Court. See *Middle Mountain Land and Produce Inc. v. Sound Commodities Inc.,* 307 F.3d 1220, 1226 (9th Cir. 2002) (holding that "a district court may award reasonable prejudgment interest to PACA claimants if such an award is necessary to protect the interests of PACA claimants, and that such an award absent contract is discretionary"); see also *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071–72 (2nd Cir. 1995) (holding that a district court has broad discretion to fashion a prejudgment interest award to PACA claimants, and holding that the district court did not abuse its discretion in awarding prejudgment interest at the federal statutory interest rate as opposed to the higher New York statutory rate); *In re Southland + Keystone,* 132 B.R. 632 (BAP 9th Cir. 1991); *Sato & Co., LLC v. S & M Produce, Inc.*, 2010 WL 431601, at *2 (N.D. Ill. Feb. 2, 2010), order clarified, 2010 WL 3273927 (N.D. Ill. Aug. 16, 2010); *May Produce Co., Inc. v. East West Imports, Inc.,* 2009 WL 4884154, at *2 (N.D. Tex. Dec. 15, 2009); *Ger-Nis Intern., LLC v. FJB, Inc.,* 2008 WL 2704384, at *17 (S.D.N.Y. July 3, 2008); *Fresh Kist Produce, LLC v. Choi Corp., Inc.,* 251 F.Supp.2d 138 (D.D.C. March 10, 2003).

Given that two-thirds of the PACA Claimants are entitled to contractual interest, the Court concludes that an award of statutory interest to the other claimants (albeit at a lower rate) is appropriate. Therefore, statutory prejudgment interest is awarded to Couture and TGS. With respect to the proper interest rate, the Court concludes that the Illinois annualized rate of 5% is appropriate.[3] See 815 ILCS 205/2.

---

[3] While Couture requested an interest rate of 9% at the Illinois general interest rate [see 169, at 3, citing 815 ILCS 205/4], the Court has previously awarded prejudgment interest at the rate of 5% in a PACA case

### 3. The Olympic Defendant's Objections

On July 9, 2018, three of the PACA Claimants—Epic, TLS, and Couture—filed timely supplemental claims ("the Supplemental Claims") for additional interest. [226–228.] On July 23, 2018, the Olympic Defendants filed objections to each of the Supplemental Claims. [234–236.] Each of the objections simply stated "Defendants deny that [ ] is entitled to additional interest," and, in the alternative, "Defendants assert that the amount of interest * * * is excessive." Epic, TLS, and Couture subsequently filed responses to these objections as required by the Claims Procedure. [239–241.]

First, the Olympic Defendants' objections fail because they do not provide any specific legal and/or factual basis for the objections. [127, ¶ 12.] Second, even if the Olympic Defendants' objections were valid, the Court has already determined that the PACA Claimants are entitled to interest on either contractual or statutory grounds. See *supra* Sections II(B)(1–2). The Olympic Defendants have not pointed to any legal or factual basis to conclude otherwise. The Court therefore overrules the Olympic Defendants' objections.

### 4. Final Date for Interest Accrual

Finally, the Court must determine the date through which interest should be calculated. First, the Court notes that the fact that some PACA Claimants filed supplemental claims for interest, and others did not, does not change the analysis. Generally, prejudgment interest is awarded through the date of judgment. See, e.g., *Cement Division, Nat'l Gypsum Co. v. City of Milwaukee,* 144 F.3d 1111, 1117 (7th Cir. 1998) ("the very name 'prejudgment' interest strongly suggests that the relevant date is a judgment date"). The Court sees no reason to deviate from that

---

under 815 ILCS 205/2, which provides the interest rate on, among other things, "money withheld by an unreasonable and vexatious delay of payment." See, e.g., *Sato & Co., LLC*, 2010 WL 3273927, at *8; 815 ILCS 205/2. The Court sees no reason to deviate from that here.

general rule here. The multitude of complications that have arisen in this case do not change the fact that the PACA Claimants have been without access to the funds at issue for the duration of this litigation. Moreover, most of the blame for the delay in moving this case forward can be placed squarely at the feet of the Olympic Defendants, who were unable to produce even a rudimentary accounting of their business affairs until months into this litigation, despite repeated court orders to do so. In order to effectuate the purpose of prejudgment interest—that is, making the PACA Claimants whole—interest will continue to accrue until the Court enters a final judgment, or the Olympic Defendants pay the total of the Produce Claims and any accrued interest, whichever comes first. The chart in Section III *infra* includes the interest that has accrued up to, and including, September 30, 2018.

C.   **Attorneys' Fees and Costs**

Kiko's, Classic Fruit, Epic, and TLS each sought attorneys' fees and costs pursuant to their contracts with the Olympic Defendants in their Initial Claims. [139, at 4 (Kiko's); 140, at 4 (Classic Fruit); 157, at 4 (Epic); 168, at 3 (TLS)]. The Court has confirmed that the four included the appropriate contractual language on their invoices. The Supplemental Claims by Epic, TLS, and Couture similarly included requests for additional attorneys' fees and costs. [226–228.] The Olympic Defendants objected to these additional attorneys' fees and costs, stating "Defendants deny * * * [Claimant] is entitled to * * * any additional attorneys' fees" and, in the alternative, "Defendants assert that the amount of * * * additional attorneys' fees is excessive." [234–236.] Epic, TLS, and Couture each addressed these objections in their respective responses. [239–241.] Additionally, in its most recent status report, STC Capital Bank asserted that none of the PACA

Claimants were entitled to attorney's fees under Illinois law and that it would assert as much in a future motion for summary judgment. [266, at 5–6.] [4]

As noted above, PACA entitles the PACA Claimants to "full payment of the sums owing in connection with [PACA] transactions * * *." 7 U.S.C. § 499e(c)(2). Based on this statutory language, three circuits have held that "where the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA." *Coosemans Specialties, Inc. v. Gargiulo,* 485 F.3d 701, 709 (2d Cir. 2007) (quoting 7 U.S.C. § 499e(c)(2)); see also *Country Best,* 361 F.3d at 632; *Middle Mountain Land & Produce,* 307 F.3d at 1224. Courts also have held that allowing the recovery of contract-based attorneys' fees is consistent with PACA's goal "to give produce sellers a meaningful opportunity to recover full payment of the amounts due for their sales." *Country Best*, 361 F.3d at 632. No party has cited—nor has the Court's own research revealed—any circuit authority to the contrary. The Court finds these decisions persuasive. The only question therefore is whether Kiko's, Classic Fruit, Epic, and TLS are contractually entitled to these attorney's fees.

---

[4] STC Capital Bank stands on potentially different grounds than the Olympic Defendants, as neither it nor any related entities was named as a Defendant until April 18, 2018, when the first amended complaint [182] was filed and a summons was issued. That complaint was quickly superseded by the second amended complaint [186] on April 23, 2018. The docket does not show the exact date on which STC Capital was served, but it is clear that it was not even named as a defendant until less than two weeks before the April 30 deadline for objections under the Claims Procedure. Epic's counsel did, however, serve STC Capital a copy of the Notice of Pending PACA Trust Litigation, the Claims Procedure [127], and the Order Granting Preliminary Injunction [128] via first class mail on March 14, 2008. [129.] STC Capital also filed a declaration in support of its non-PACA claims against the Olympic Defendants [149] and a complaint to intervene in the instant action on April 6, 2018 [152]. These filings indicate that STC Capital had some knowledge of the PACA Claimants' claims. But, given the still-open question of whether PACA Trust assets were used to pay certain expenses at the properties in which STC Capital claims an interest remains unanswered and discovery on that issue continues, it would be premature to require full briefing on any rights that the non-Olympic Defendants may have in relation to the PACA Claimants' claims—including, for example, whether those Defendants even have standing to object to the PACA Claimants' request for attorneys' fees or whether they waived any objections by failing to raise them earlier. Therefore, the ruling below rejecting the Olympic Defendants' objections to the PACA Claimants' fee requests does not foreclose the non-Olympic Defendants from raising their own objections, nor does it address any responses that the PACA Claimants may have to such objections.

1. **Entitlement to Attorneys' Fees & Costs**

Objections to the PACA Claimants' Initial Claims were due on April 30, 2018. Objections to any supplemental claims were due July 23, and objections to the PACA Claims Chart were due on August 27. Although the Olympic Defendants filed objections to the PACA Claimants' Initial Claims, the Supplemental Claims, or the PACA Claims Chart, [see 246, incorporating by reference 194; 234–36], they provided no factual or legal basis for their assertion that the PACA Claimants seeking attorneys' fees and costs are not contractually entitled to those fees [see 234–236]. Consequently, their objections are invalid under the Claims Procedure. Any additional objections at this late date are "forever waived" unless the putative objector can show good cause for its delay and that the delay will not cause substantial prejudice to the relevant party.[5] [127, ¶ 13.] In view of the history of this litigation and their incessant pattern of delay, the Olympic Defendants could not make such a showing.

Moreover, even if a proper objection had been filed, it seems unlikely to have succeeded given the current state of the law. As in the instant case, the plaintiffs in *Coosemans, Country Best,* and *Middle Mountain* based their claim to attorneys' fees and costs on language included in their invoices, which they asserted created a contractual right to such an award. See *Coosemans,* 485 F.3d at 704, *Country Best,* 361 F.3d at 631; *Middle Mountain,* 307 F.3d at 1222. The *Country*

---

[5] As noted above, it remains to be determined whether any creditor that received, whether directly or indirectly, notice of this litigation, the Claims Procedure, and the Preliminary Injunction served by Epic's counsel on March 14, 2018 waived any objections to the PACA Claimants' claims by not objecting before the deadlines outlined above. [See 127, ¶ 8 ("Any person or company that has an interest in the PACA Trust Assets affected by this Order or has unsatisfied claims against either Defendant affected by this Order shall have the right to file an Objection to the terms of this Order. * * * Any person or entity served with a copy of this Order shall be deemed to have consented to, and agreed to be bound by, the terms of this Order unless such person or entity timely files and serves on all other parties appearing in this action an Objection to the Order by the Objection To Order Deadline.")] Should that be the case, neither the non-Olympic Defendants, nor any other creditor, could challenge the PACA Claimants' fees, costs, or Produce Claims without a showing of good cause for the delay and the absence of substantial prejudice to the PACA Claimants.

*Best* and *Middle Mountain* courts remanded to the district courts to determine whether the invoices created a contractual right to attorneys' fees. *Country Best,* 361 F.3d at 633; *Middle Mountain,* 307 F.3d at 1225. In *Coosemans,* the Second Circuit affirmed the district court's conclusion that the plaintiffs' invoices did in fact create an enforceable contract providing for attorneys' fees under N.Y. U.C.C. § 2–207(2). 485 F.3d at 709.

Here, at least one of the PACA Claimants has argued that the attorneys' fees and costs language on their invoices became part of their contracts with the Olympic Defendants pursuant to 810 ILCS 5/2–207. [See 241.] 810 ILCS 5/2–207, adopting U.C.C. § 2–207(2). Section 2–207(2) provides that, between merchants, additional terms in an acceptance or confirmation become part of the contract unless: "(a) the offer expressly limits acceptance to the terms of the offer; (b) [the terms] materially alter [the contract]; or (c) notification of objection to [the additional terms] has already been given or is given within a reasonable time after notice of them is received." 810 ILCS 5/2–207(2). Here, the parties are merchants. Therefore, the attorneys' fee provisions contained in the claimants' invoices are part of the relevant contracts unless one of the three exceptions noted above applies.

As the parties opposing the inclusion of the attorney's fees and costs terms, the Olympic Defendants bear the burden of proving one of the exceptions. *Comark Merchandising, Inc. v. Highland Group, Inc.,* 932 F.2d 1196, 1201 (7th Cir. 1991). Their submissions did not even attempt to carry that burden. Consequently, the Court concludes that the attorneys' fees and costs provisions are part of the enforceable contracts of Kiko's, Classic Fruit, Epic, and TLS.

However, the Court defers any specific award of attorneys' fees at this time. First, the Court has an independent duty to assure the reasonableness of all attorneys' fee awards. See, e.g., *Pac. Coast Fruit Co. v. Ron Squires dba Four Seasons Farmers Mkt.*, 2016 WL 4443166, at *2

(D. Or. Aug. 19, 2016) (noting an independent duty to assess the reasonableness of a request for attorneys' fee request in a PACA case where the defendant had never appeared), citing *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992); see also *Jaffee v. Redmond,* 142 F.3d 409, 416 n.2 (7th Cir. 1998) ("A district court is certainly empowered to reduce a fee request sua sponte, and indeed it has an independent obligation to scrutinize the legitimacy of such a submission."). Second, a significant portion of this case remains unresolved—in particular, the question of what, if any, real property of the Olympic Defendants is subject to the PACA Trust. The Court will therefore defer its review of the PACA Claimants' specific requests for attorneys' fees and costs until the resolution of any motions for summary judgment regarding the composition of the PACA Trust, rather than conducting multiple piecemeal analyses.[6] The Court concludes this is the fairest way to proceed given that the purportedly undisputed PACA Trust assets do not even cover the amount of the Produce Claims,[7] much less those sums plus the claimed attorneys' fees and costs.

Finally, given the ongoing nature of this action, and the fact the Claims Procedure did not envision the longevity of this suit, the Court will allow any party to file objections to any PACA Claimant's request for attorneys' fees and costs dated after September 30, 2018. But, consistent with the discussion above, those objections may only challenge the reasonableness of any requested attorneys' fees and costs, not a particular PACA Claimant's entitlement to fees in general.

---

[6] That said the Court wishes to remind the parties of its earlier observation that, "Plaintiff has made a strong case for further sanctions, including attorneys' fees, based on the record to date." [81.] Moreover, an initial review of the attorneys' fees and costs submitted to the Court suggests that most, if not all, of the requested amounts are reasonable and substantially supported.

[7] Approximately $67,000 remains from the Olympic Defendants' frozen bank accounts. [274-1, ¶ 63]

### D. Pro Rata Distribution of Funds

The Court also adopts the pro rata distribution rates provided in the PACA Proof of Claims Chart [245-1, Col. 15], with one minor adjustment. As explained above in Section II(B)(2) *supra*, the Court has reduced Couture's claim for interest from the requested rate of 9% to 5%, a roughly 44.4% decrease. Consequently, the Court the reduced the amount of Couture's Total Accrued Interest through July 31, 2018 from $4,928.50 to $2,735.32 [245-1, Col. 4], which resulted in the following new pro rata distribution rates: Kiko's (5.33%); Classic Fruit (14.51%); TGS (15.61%); Epic (51.68%); TLC (7.02%); and Couture (5.85%). The Court notes that these rates may change based on its final determination of the reasonableness of each PACA Claimant's request for attorneys' fees. Nonetheless, any interim distributions of the PACA Trust funds shall proceed according to these rates unless and until the Court orders otherwise.

### E. Request for Reimbursement

Finally, in its most recent filing, counsel for Epic requested this Court authorize the immediate payment of approximately $1,000 comprising attorney/paralegal time and costs counsel incurred by administering the Claims Procedure. [274-1, ¶¶ 59-30.] The request amounts to a motion for reimbursement, which the Court anticipated and provided for in the Claims Procedure [127, ¶ 6], and appears to be both reasonable and *de minimis*, both in relation to the amounts claimed and even to the amount currently gathered in the existing corpus of assets. Epic's request is therefore granted.

## III. Conclusion

For the foregoing reasons, Plaintiff Epic Fresh Produce, LLC's ("Epic") Motion for Ruling on Objections of the Olympic Defendants to Plaintiffs' Supplemental Claims and the PACA Trust Chart [248] is granted. The PACA Claimants' claims are allowed as follows:

| Claimant | Approved Produce Claim[8] | Interest approved through September 30, 2018[9] | Total Claim approved through September 30, 2018 | Pro Rata Distribution Rate |
|---|---|---|---|---|
| **Kiko's** | $38,357.00 | $5,456.17 | $43,813.17 | 5.33% |
| **Classic Fruit** | $94,229.05 | $27,202.07 | $121,431.12 | 14.51% |
| **TGS** | $144,475.13 | $6,216.05[10] | $150,691.18 | 15.61% |
| **Epic** | $180,705.90 | $37,547.91 | $218,253.81 | 51.68% |
| **TLS** | $45,564.00 | $7,091.23 | $46,273.23 | 7.02% |
| **Couture** | $53,294.00 | $3,183.39[11] | $56,477.39 | 5.85% |

The case is set for further status on January 15, 2019 at 10:00 a.m.

Dated: December 18, 2018

_____
Robert M. Dow, Jr.
United States District Judge

---

[8] All amounts taken from the Initial Claims. [139–40; 156–57; 168–69.]

[9] Unless otherwise noted, amounts taken from the PACA Claimants' submissions to the Court. [See 272–275.]

[10] Calculated by the Court based on TGS's submission of April 9, 2018. [See 156, at 10.]

[11] Given that Couture calculated its interest at a rate of 18% [275-1, at 44], the Court has reduced the amount it calculated to reflect the 5% it awarded.